UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVANTI SYSTEMS USA, LLC,

                              Plaintiff,

        v.

NICOLAS SANCHEZ, *et al.*

                              Defendants.

No. 24-CV-6704 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Jonathan Nelson, Esq.
Dorf & Nelson LLP
Rye, NY
*Counsel for Plaintiff*

Kenneth R.L. Parker, Esq.
Nathaniel Lichtin, Esq**.**
Parker Key Law LLC
Newton, MA
*Counsel for Defendants*

Scott Edward Charnas, Esq.
Charnas Law Firm, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Avanti Systems USA, LLC ("Avanti" or "Plaintiff") brings this Action for breach of

contract, misappropriation of trade secrets, tortious interference with contract, as well as

injunctive and declaratory relief against Nicolas Sanchez ("Sanchez"), Solite Systems LLC

("Solite"), and Mark Johnson ("Johnson") (collectively, "Defendants").  (*See generally*

Amended Compl. ("AC") (Dkt. No. 29).)  Before the Court are Defendants' Motion to Dismiss

for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2)

and Plaintiff's Cross-Motion for Sanctions.  (*See* Defs. Not. of Mot. ("Def. Mot.") (Dkt. No. 46);

Pl. Mot. for Sanctions ("Pl. Sanctions Mot.") (Dkt. No. 48).)  For the following reasons, the

Court denies Defendants' Motion in part and grants it in part.  Plaintiff's Cross-Motion is denied.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's Amended Complaint ("AC"), as well as

admissible evidence submitted by the Parties, and construed in the light most favorable to

Plaintiff.[1]

#### 1.  The Parties

Plaintiff is a limited liability company organized and existing under the laws of the state

of Connecticut.  (*See* AC ¶ 1.)  It is owned by Matthew Gordon, a domiciliary of Connecticut.

(*See id*. ¶ 2.)  Plaintiff is in the business of designing, supplying, manufacturing, and installing

high-end glass wall systems and partitions.  (*See id.* ¶ 3.)

Sanchez is a natural person domiciled within the state of Rhode Island.  (*See id*. ¶ 4.)

Solite is a limited liability company organized under the laws of the State of Massachusetts, with

its principal place of business in Boston, Massachusetts.  (*See id*. ¶ 5.)  Solite is in the business of

designing, supplying, and manufacturing glass wall systems and partitions.  (*See id*. ¶ 6.)

---

[1] "Although a court must credit a plaintiff's allegations in support of jurisdiction and 'construe the pleadings and any supporting materials in the light most favorable to the plaintiff,' a court may also consider materials beyond the pleadings in connection with a Rule 12(b)(2) motion."  *Paige v. Digital Bus. Networks All., Inc*., No. 24-CV-3169, 2025 WL 753952, at *4 (S.D.N.Y. Mar. 10, 2025) (alteration adopted) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank*, *SAL*, 732 F.3d 161, 167 (2d Cir. 2013)); *see also Casville Invs., Ltd. v. Kates*, No. 12-CV-6968, 2013 WL 3465816, at *1 n.2 (S.D.N.Y. July 8, 2013) (noting, on a 12(b)(2) motion, that the facts were "drawn from [the plaintiff's] complaint and the affidavits submitted by the parties" and should be "construed in the light most favorable to [the plaintiff] for purposes of the instant motion").

Johnson is a natural person domiciled in the state of Alaska.  (*See id*. ¶ 7.)  Johnson and Sanchez

are the owners of Solite.  (*See id*. ¶ 8.)  Johnson is the Chief Financial Officer ("CFO") and a

50% owner of Solite, and has invested just over $300,000 in Solite.  (*See id.* ¶¶ 31–34.)

       2.  <u>Sanchez's Employment with Avanti and the Formation of Solite</u>

On or around February 3, 2022, Sanchez was offered employment at Avanti.  (*See id*.

¶ 38.)  On or around February 12, 2022, Avanti sent Sanchez a copy of a restrictive covenant

employment agreement (the "RCA"), requesting that it to be signed and returned.  (*See id.* ¶ 39.)

On or around February 15, 2022, Sanchez notified Avanti that the RCA was filled out and that he

was "making it a priority" to scan and send the signed RCA to an Avanti employee.  (*See id*.

¶ 40.)  On February 18, 2022, Sanchez notified Avanti that his scanner was not working properly

and requested to send Avanti a picture of the signed RCA instead.  (*See id*. ¶ 41.)  On that same

day, Sanchez emailed Avanti a photo of the first page and last page of the RCA, the latter of

which included his signature.  (*See id*. ¶ 42.)

On December 15, 2022, Sanchez began his employment with Avanti on or around February 21, 2022.  (*See id*.

¶ 45.)  Sanchez worked in Research and Development for Avanti, where he had first-hand

knowledge of all the test data and product drawings, as well as Avanti's manufacturers and

testing facilities.  (*See id*. ¶ 46.)  Sanchez's duties while employed at Avanti included interaction

with Avanti's main manufacturer Alumac Industries ("Alumac").  (*See id*. ¶ 63.)  On December

15, 2022, while Sanchez was still employed with Avanti, he caused Solite to enter into a Product

Development Non-Disclosure Agreement with Alumac, as condition precedent to Solite and

Alumac doing business together.  (*See id*. ¶¶ 61–65, 67.)

On or around December 17, 2022, while Sanchez was still employed by Avanti, he

incorporated Solite in Massachusetts.  (*See id*. ¶¶ 53–54.)  Sanchez and Johnson executed the

Operating Agreement for Solite, in which Sanchez is listed as the President of Solite, and Johnson is listed as the CFO. (*See id*. ¶¶ 57–59.)

On February 21, 2023, while Sanchez was employed by Avanti, Solite made its first purchase from Alumac. (*See id*. ¶¶ 69–70.) On or around that same day, Solite filed a provisional patent for a modular glass wall system (the "Patent"). (*See id*. ¶ 73.) Sanchez was still employed by Avanti at the time the provisional patent was filed, and he did not notify anyone at Avanti that he had filed the Patent. (*See id*. ¶¶ 74–75.) The Provisional Application for the Patent was for a glass partition system, the business that Avanti is in. (*See id*. ¶ 77.)

Furthermore, during Sanchez's employment, Sanchez downloaded a large number of files related to Avanti's intellectual property from his work computer. (*See id*. ¶ 85.) Many of the files which were downloaded by Sanchez were not related to projects he was working on and contained proprietary technical details. (*See id*. ¶¶ 86, 89.) In fact, Sanchez downloaded every file that had been created since Avanti's inception. (*See id*. ¶ 88.)

Sanchez resigned from his position at Avanti on April 17, 2023. (*See id*. ¶ 91.) Since that time, Solite has been competing with Avanti for market bids. (*See id.* ¶ 93.)

    3.  <u>Prior Litigation</u>

On or around September 8, 2023, Avanti commenced an Action against Solite and Sanchez in Westchester County Supreme Court. (*See id*. ¶ 104.) On or around May 9, 2024, Plaintiff and Defendants Sanchez and Solite entered into a settlement agreement (the "Settlement Agreement"). (*See id*. ¶ 107.) Pursuant to the Settlement Agreement, Sanchez and Solite were to pay Avanti $250,000.00 as a settlement payment ("Settlement Payment"), with the initial payment being due within 30 days the effective date of the Settlement Agreement. (*See id*. ¶ 109.) Section five of the Settlement Agreement Provides:

All payment obligations of the Solite Defendants herein are each a condition precedent to the validity of this Agreement inclusive of all its terms including but not limited to Sections 8, 9, 10, 11, 12, 13 and 14, excluding solely this Section 5. In the event the Solite Defendants fail to fulfill any payment obligation and fail to cure pursuant to Section 6, this Agreement and all of its provisions (excluding solely this Section 5) shall be rendered null and void and Avanti may reinstitute the Action as if this Agreement did not exist. Defendants agree that any statute of limitations shall be tolled during the term of this Agreement and the Defendants agree that, should the Agreement be rendered null and void for failure to fulfill any payment obligation herein, the Defendants shall not raise Statute of Limitations as an affirmative defense and waive such defense. In the event that the Action is refiled, the Defendants and Mark Johnson agree and consent to the personal jurisdiction of the New York State Supreme Court, County of Westchester. If the Action is refiled, the Defendants shall not be entitled to any setoff for any payment made pursuant to this Agreement and waive any claim therefor. Notwithstanding anything in this Agreement to the contrary, this sole provision 5 shall survive and this sole provision 5 is not subject to the condition precedent.

(*See id*. ¶ 110.)  Neither Solite nor Sanchez made any payments pursuant to the

Settlement Agreement.  (*See id*. ¶¶ 111–113.)

B.  <u>Procedural Background</u>

Plaintiff filed the instant Action on September 4, 2024.  (*See* Compl. (Dkt. No. 1).)  On

September 15, 2024, Defendants file a pre-motion letter requesting leave to file a motion to

dismiss the Complaint for lack of personal jurisdiction.  (*See* Dkt. No. 19.) On September 16,

2024, Plaintiff filed its letter in Opposition.  (*See* Dkt. No. 22.)  On September 25, 2024, Plaintiff

filed the AC.  (*See* AC.)

Pursuant to a briefing schedule adopted the Court, (*see* Dkt. Nos. 44–46), Defendants

filed their Motion to Dismiss on December 19, 2024, (*see* Not. of Mot), and accompanying

papers on December 20, 2024 (*see* Defs. Mem. of Law in Supp. of Mot. to Dismiss ("Defs.

Mem.") (Dkt. No. 47)).  On February 10, 2025, Plaintiff filed a Cross-Motion for Sanctions, a

Memorandum of Law in support of that Motion, and a Memorandum in Opposition to the

Motion to Dismiss.  (*See* Pl. Sanctions Mot.; Mem. of Law in Supp. of Mot. for Sanctions ("Pl.

Opp."); Decl. of Ryan P. Kaupelis in Opp. Mot. to Dismiss ("Kaupelis Decl.") (Dkt. Nos. 48, 49, 50, 51).)[2] On March 3, 2025, Defendants filed their Reply. (*See* Defs. Rep. in Supp. of Mot. to Dismiss ("Def. Rep.") (Dkt. No 57).)

## II. Discussion

### A. Standard of Review

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court has jurisdiction over the defendant. *See In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023) (same). However, "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (alteration adopted) (italics, citation, and quotation marks omitted); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) ("Where . . . a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." (citation and quotation marks omitted)). "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction."

---

[2] Plaintiff appears to have filed the same memorandum in Opposition to Defendants' Motion and in support of its Cross-Motion. (*Compare* Mem. of Law in Supp. of Mot. for Sanctions (Dkt. No. 49) *with* Mem. in Opp. to Defs. Mot. to Dismiss (Dkt. No. 51).) For clarity, the Court will refer to the document at Docket Number 49 when discussing either Plaintiff's Opposition or its Cross-Motion.

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997); *see also Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *5 (S.D.N.Y. Sept. 23, 2024) (same). A plaintiff may "make this showing through [her] own affidavits and supporting materials, containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alteration adopted, citations and quotation marks omitted); *see also Mayor v. Sankareh*, No. 21-CV-10831, 2023 WL 2393919, at *2 (S.D.N.Y. Feb. 7, 2023) (same), *report and recommendation adopted*, 2023 WL 2207602 (S.D.N.Y. Feb. 24, 2023).

Although a court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[,]" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)), a court may also consider materials beyond the pleadings in connection with a Rule 12(b)(2) motion, *see, e.g.*, *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11-CV-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012))). "Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet [a plaintiff's] burden" of establishing personal jurisdiction over a defendant. *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini*, 148 F.3d at 185); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative

inferences' in the plaintiff's favor" in considering a Rule 12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

B.  Analysis

1.  Personal Jurisdiction

"There are three requirements for the Court to exercise personal jurisdiction." *Johnson v. Stop & Shop Supermarket Co.*, No. 22-CV-9691, 2024 WL 1217074, at *6 (S.D.N.Y. Mar. 21, 2024) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–61 (2d Cir. 2012)).

> First, the plaintiff's service of process upon the defendant must have been procedurally proper.  Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective.  Third, the exercise of personal jurisdiction must comport with constitutional due process principles.

*Id.* (quotation marks and citations omitted).  Here, the neither the sufficiency of Plaintiff's service of process on Defendants, nor questions of specific or general jurisdiction are at issue. [3] Rather, the sole dispute centers on whether the Court has personal jurisdiction over Defendants by virtue of their consent.  In particular, Plaintiff argues that the RCA signed by Sanchez at the outset of his employment and the Settlement Agreement signed by Sanchez in 2024 establish the Court's personal jurisdiction over Defendants.

---

[3] Defendants do argue that the Court cannot exercise personal jurisdiction over them by under the specific or general theories of jurisdiction.  (*See* Defs. Mem. 10–14.)  Plaintiff concedes this argument.  (*See* Pl. Opp. 7 (referring to those arguments by Defendants as "strawman arguments" and stating "[t]o be clear: this is not a long-arm jurisdiction case. This is a case where this Court has jurisdiction based on the forum selection clause . . . ").)  Therefore, the Court only addresses the question of consent.

a. <u>Sanchez</u>

Defendants argue that Sanchez did not consent to personal jurisdiction in New York, because the RCA, the forum selection clause on which Plaintiff relies, was never properly executed.  (*See* Defs. Mem. 14–16.)  The Court disagrees.

As relevant for this discussion, the RCA provides:

> This Agreement, the rights and obligations of the parties hereto, and all claims or disputes relating thereto, shall be governed by and construed in accordance with the laws of the State of New York. Jurisdiction shall be proper in New York State or the United States District Court for the Southern District of New York and the appellate courts having jurisdiction of appeals in such courts, without regard to the choice of law provisions.

(*See* AC, Ex. 1 ("RCA") 6 (Dkt. No. 29-1).)  "A district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause."  *Miller Fam. Indus., Inc. v. Ives*, No. 25-CV-2923, 2025 WL 2205937, at *4 (S.D.N.Y. Aug. 4, 2025) (alteration adopted) (quoting *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019)).  If these factors are met, "[the clause] is presumptively enforceable," *see Seacor Marine LLC v. White Marlin Operating Co.*, No. 23-CV-8081, 2025 WL 1259999, at *3 (S.D.N.Y. May 1, 2025) , and that presumption can only be overcome by "(4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching," *see Miller Fam. Indus., Inc.*, 2025 WL 2205937, at *4 (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014)).[4]

---

[4] The Court addresses Sanchez's argument that he did not, in fact, sign the RCA below.

Here, the Parties do not dispute the applicability of the three factors, but rather whether Sanchez did or did not agree to the terms of the RCA, and therefore whether he can be bound to its forum selection clause. (*See* Defs. Mem. 14–16; Pl. Opp. 15–18.)  In general, where a party signs a contract, that party is presumed to have read the contract and agreed to its terms.  *See McCrae v. Oak St. Health, Inc.*, No. 24-CV-1670, 2024 WL 4692047, at *7 (S.D.N.Y. Nov. 4, 2024) ("In signing the written contract, [the defendant] is conclusively presumed to know its contents and to assent to them." (internal quotation marks and citations omitted)), *aff'd*, No. 24-CV-1670, 2025 WL 415389 (S.D.N.Y. Feb. 6, 2025); *Aminoff & Co. LLC v. Parcel Pro, Inc.*, No. 21-CV-10377, 2022 WL 987665, at *3 (S.D.N.Y. Apr. 1, 2022) ("[A] person who signs a contract is presumed to know its contents and to assent to them." (internal quotation marks omitted) (quoting *Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999)). This rule is equally applicable to contracts containing forum selection clauses.  *See Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 306–07 (S.D.N.Y. 2023) (noting that a party "is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents it signed." (alteration adopted) (quoting *Weingrad v. Telepathy, Inc.*, 05-CV-2024, 2005 WL 2990645, at *4 (S.D.N.Y. Nov. 7, 2005)).  Thus, by signing the RCA and sending the signature page back to Plaintiff, Sanchez presumptively agreed to its terms, including the forum selection clause.[5]

---

[5] The Court also rejects Defendants' argument that Sanchez modified the terms of the agreement by sending back only the first and last pages of the RCA with his signature. (*See* Defs. Rep. 8 (arguing that Sanchez "agreed to just one term of the proposed contract" when he only returned the first and last pages of the RCA).)  As noted above, Sanchez's signature presumptively indicates his agreement to the terms outlined in the RCA.  Furthermore, other courts considering similar arguments have found them to be without merit. *Herrera v. Manna 2nd Ave. LLC*, No. 20-CV-11026, 2022 WL 2819072, at *5 (S.D.N.Y. July 18, 2022) ("Plaintiffs

In spite of this presumption, Sanchez attests that he never intended to assent to the terms of the RCA, and that his signing of the contract was merely a means of "get[ting] payroll started," which he alleges Avanti knew when he sent in the signed form. (*See* Defs. Mem. 14–16.) This version of events is contradicted by the emails submitted into evidence. Although Sanchez states that he hesitated to sign the RCA because of its "overly restrictive provisions," and that Avanti understood as much, the email exchange between Sanchez and Joann Kay (Avanti's human resources representative) does not make mention of this hesitation. (*See generally* AC, Ex. 2 (Dkt. No. 29-2).) Instead, in response to Kay's repeated requests that Sanchez submit the RCA, Sanchez tells Kay that he is experiencing "computer issues" and that his "scanner is acting up." (*See* AC, Ex. 2 at 2; AC, Ex. 3 at 2.)

Moreover, at this stage in the litigation, the Court is bound to interpret the facts in the light most favorable to Plaintiff, notwithstanding Defendants' countervailing affidavits. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (rejecting "the principle" that on a Rule 12(b)(2) motion, "where a defendant rebuts a plaintiff's unsupported allegations with direct, highly specific testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation may be deemed refuted" (citation omitted)); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (noting that, until an evidentiary hearing is held, "a prima facie showing suffices,

────────────────

argue that the Agreements are invalid because Plaintiffs received only the first and last pages of the agreement, but that argument is unpersuasive. Even if they were only provided with the first and last pages of the Agreements, they would still be bound because they nonetheless signed them."); *S.E.C. v. Lyon*, 605 F. Supp. 2d 531, 546 n.5 (S.D.N.Y. 2009) ("[The] defendants maintain that because they signed and returned only the cover and signature pages of the [contract], and only the signature page in the case of the [second contract], they therefore are bound only by the terms contained on those pages and not by terms contained elsewhere in the placement agreement. [The defendants'] argument verges on fatuous.").

notwithstanding any controverting presentation by the moving party, to defeat the motion"

(emphasis added)); *Davis v. Am. Broad. Co.*, No. 22-CV-5944, 2024 WL 1178014, at *6

(S.D.N.Y. Mar. 19, 2024*)* ("[W]hile a court may consider materials beyond the pleadings, [on a

12(b)(2) motion] these too must be 'construed . . . in the light most favorable to the plaintiff.'"

(alterations adopted) (quoting *Licci*, 732 F.3d at 167)); *HomeoPet LLC v. Speed Lab'y, Inc.*, No.

14-CV-663, 2014 WL 2600136, at *7 (E.D.N.Y. June 11, 2014) ("[W]hile the court may

consider materials outside the pleadings, it must not make factual determinations where

defendant's affidavits and evidence contradict that of the plaintiff." (quoting *Zelouf Int'l Corp. v.

Na El, Inc*., No. 13-CV-1788, 2014 WL 1318372, at *2 (S.D.N.Y. Mar. 28, 2014)). Therefore,

the Court concludes that Defendants' countervailing affidavits are best presented at an

evidentiary hearing on the question of personal jurisdiction, rather than at the motion to dismiss

stage.

For the foregoing reasons, the Court concludes that Plaintiff has established a prima facie

case of personal jurisdiction over Sanchez.

b. Solite

The Parties also dispute whether the Court may properly exercise personal jurisdiction

over Solite. (*See* Defs. Mem. 21–24; Pl. Opp. 18–23, 26–28.) Plaintiff argues that personal

jurisdiction over Solite is proper because (1) Solite is a party to the Settlement Agreement, which

contains a forum selection clause, and (2) Solite is "closely related" to Sanchez, and therefore

personal jurisdiction over the company is proper under the RCA. For the following reasons, the

Court concludes these arguments are unavailing.

First, the Court concludes that the Settlement Agreement's forum selection clause is

invalidated by Defendants' non-performance, and therefore that the Agreement does not furnish

the Court with personal jurisdiction over Solite and Johnson.  It is true that Section 19 of the Settlement Agreement provides that "[t]he Parties hereby consent that jurisdiction is proper in the State of New York for any Action arising out of, under or in connection with this Agreement."  (*See* Pl. Mot., Ex. 9 ("Settlement Agreement") § 19 (Dkt. No. 48-9).)  However, Section 5 makes clear that "in the event Solite Defendants fail to fulfill any payment obligation . . . this Agreement and all of its provisions (excluding *solely* this Section 5) shall be rendered null and void . . .."  (*See id.* § 5 (emphasis added).)  Here, it is undisputed that Defendants have failed to fulfill their payment obligations.  (*See* AC ¶¶ 112–114 (alleging that because Defendants failed to make "any payments" under the Settlement Agreement, the Agreement is "'null and void' pursuant to its terms"); *see also* Def. Mem. 17 (noting it is "undisputed that Defendants did not make the payments required by the Settlement Agreement").)  Therefore, under the text of Section 5, Section 19 (the forum selection clause) has been rendered null and void, and the Court cannot exercise personal jurisdiction over either Johnson or Solite under Section 19.

Moreover, the cases cited by Plaintiff in Opposition are distinguishable, because none of them involves the designation of an *alternate forum* in the event of default.  Here, Section 5 of the Settlement Agreement not only clearly invalidates Section 19 in the event of default, but further designates a separate forum in the case of such an event.  Specifically, Section 5 states that in the event the Settlement Agreement is rendered null and void, Plaintiff is permitted to reinstitute the Action in "New York State Supreme Court, County of Westchester."  (*See* Settlement Agreement § 5.)  If the Parties had intended for Section 19 to survive the voiding of the contract, it would have been unnecessary to include a forum selection provision consenting to jurisdiction in Westchester County, as Section 19 would have plainly covered such a scenario.

(*See* Settlement Agreement § 19 (providing that "jurisdiction is proper in the State of New York").)

This fact distinguishes the Settlement Agreement from the disputes in the cases relied on by Plaintiff. *See Miller-Rich v. Altum Pharms. Inc*., No. 22-CV-3473, 2024 WL 1638637, at *7 (S.D.N.Y. Apr. 16, 2024) (no secondary forum selection clause); *PIRS Cap., LLC v. Chen*, 746 F. Supp. 3d 167, 178–183 (S.D.N.Y. 2024) (no secondary forum selection clause); *Rimler v. Ripple Junction Design Co*., No. 19-CV-5953, 2020 WL 13469576, at *3–6 (E.D.N.Y. Jan. 14, 2020) (no secondary forum selection clause); *Hatteras Enters. Inc v. Forsythe Cosm. Grp., Ltd*, No. 15-CV-5887, 2016 WL 4083386, at *9–10 (E.D.N.Y. July 30, 2016) (no secondary forum selection clause); *V.R.S. Indus. v. B.H.P.C. Mktg*., No. 01-CV-570, 2001 WL 1297809, at *2–3 (S.D.N.Y. Oct. 25, 2001) (no secondary forum selection clause).

"[I]t is a cardinal rule of contract construction that an agreement should be interpreted to give meaning and effect to each of its provisions." *BAE Sys. Info. & Elec. Sys. Integration Inc. v. L3Harris Cincinnati Elecs. Corp*., 716 F. Supp. 3d 206, 225 (S.D.N.Y. 2024) (quoting *Levine v. 860 W. Tower, Inc.*, No. 96-CV-6124, 1999 WL 185270, at *4 (S.D.N.Y. Mar. 31, 1999) (internal citations omitted)). Here, adopting Plaintiff's interpretation of the contract would render Section 5's forum selection clause redundant, in contravention of the principles of contract interpretation. *See Sussman Sales Co. v. VWR Int'l, LLC*, No. 20-CV-2869, 2021 WL 1165077, at *8 (S.D.N.Y. Mar. 26, 2021) ("[A] contract should not be interpreted so as to render a clause superfluous or meaningless." (citing *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)), *on reconsideration on other grounds*, No. 20-CV-2869, 2021 WL 6065760 (S.D.N.Y. Dec. 21, 2021). Therefore, the Court concludes that the best interpretation of the contract reads Section

5's forum selection clause as becoming operable in the event of default.  A different interpretation would render the forum selection clause in Section 5 superfluous.

Plaintiff also argues that personal jurisdiction over Solite is appropriate because it is "closely related" to Sanchez, over whom the Court does have jurisdiction pursuant to the RCA. (*See* Pl. Opp. 26–28.)  The Court disagrees.  It is true that "[i]n general, 'the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.'" *Digital Land Wireless, Inc. v. Arch Telecom Inc*., No. 23-CV-1582, 2025 WL 1707117, at *6 (E.D.N.Y. Mar. 31, 2025) (quoting *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013)).  "Indeed, the Second Circuit has held that 'a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory.'" *Villalobos v. Telemundo Network Grp. LLC*, No. 22-CV-7665, 2024 WL 5008980, at *4 (S.D.N.Y. Dec. 6, 2024) (quoting *Magi XXI, Inc*., 714 F.3d at 723)).

Nevertheless, the "Second Circuit has not reached the question of when a signatory may enforce a forum selection clause against a non-signatory."  *Villalobos*, 2024 WL 5008980, at *4 (quoting *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 324 (S.D.N.Y. 2017)).  And although "a number of district court cases in this Circuit have embraced the closely related standard in such cases, a growing number of cases in this District have begun to question the blind application of this test to situations where a non-signatory objects to a signatory's enforcement of the forum-selection clause against him."  *Id.* at *4 (internal quotation marks and citations omitted); *see also Koh v. Koo*, No. 22-CV-6639, 2023 WL 5352786, at *3 (S.D.N.Y. Aug. 21, 2023) (noting that while several courts have held that a court may exercise personal jurisdiction over a defendant who was not a party to a contract containing a forum selection

clause, "the better view . . . is that a forum-selection clause does not give rise to personal jurisdiction over a non-signatory unless the non-signatory is otherwise bound to the agreement, as for example under the ordinary law of successor liability and alter ego" (internal citations and quotation marks omitted)); *Clarke v. TRIGO U.S., Inc*., No. 22-CV-1917, 2023 WL 2456814, at *5 (S.D.N.Y. Mar. 10, 2023) (applying the due process test and denying personal jurisdiction even assuming, arguendo, that the non-signatory met the "closely related" test).

The Court finds the reasoning in *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379 (S.D.N.Y. 2019), persuasive:

> The rules governing personal jurisdiction . . . are driven by constitutional concerns over the court's power to exercise control over the parties. Although the personal jurisdiction inquiry is not mechanical, it is constrained in ways that the venue inquiry is not.  Most notably, a plaintiff must make a baseline showing that the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Regardless of the convenience to the parties or the private and public interests at stake, a court cannot exercise personal jurisdiction unless the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
>
> These constitutional requirements caution against a liberal application of forum selection clauses to non-signatory defendants. . . . [T]he application of forum selection clauses to non-signatories has been justified by various policy benefits, including the contribution that such clauses have been praised for making to certainty in commercial transactions, the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, the promotion of vital interests of the justice system, including judicial economy and efficiency, and the guarantee that parties will not be required to defend lawsuits in far-flung fora.  But although these benefits may be salutary, a court cannot consider them without first determining whether the exercise of jurisdiction over the defendant comports with due process.

*Id*. at 394–395.  Given the trend towards a stricter application of the personal jurisdiction requirements in this District, as well as the compelling constitutional concerns related to a more relaxed approach, the Court joins a number of other courts and applies this "more critical" strain of cases into the dispute at bar.  *See, e.g., Villalobos*, 2024 WL 5008980, at *5 (applying the

more "critical" line of cases); *Koh*, 2023 WL 5352786, at *3 (rejecting the more liberal

application of personal jurisdiction to non-signatories of a forum selection clause); *Clarke*, 2023

WL 2456814, at *5 ("The Court joins those district courts that have concluded that personal

jurisdiction premised on the 'closely related to' or other theory of constructive consent must still

satisfy the requirements of due process of law."); *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 513–

15 (S.D.N.Y. 2023) (taking a similarly narrow approach when in determining whether a "closely

related" entity could be subject to a forum selection clause to which they were a non-signatory).

Solite cannot be bound to the RCA under ordinary principles of contract law. "Under

New York law, 'it is axiomatic that a contract cannot bind a non-party unless the contract was

signed by the party's agent, the contract was assigned to the party, or the signatory is in fact the

'alter ego' of the party.'" *Villalobos*, 2024 WL 5008980, at *5 (quoting *Arcadia Biosciences*,

356 F. Supp. 3d at 390). Here, only Sanchez signed the RCA that renders this Court's exercise

of personal jurisdiction appropriate. (*See* AC, Ex. 4 ("Signed RCA") 2 (Dkt. No. 29-4).)

Therefore, neither Solite nor Johnson is bound by ordinary contract principles to the RCA.

Nor can Solite be bound to the RCA as an alter ego of Sanchez. To determine whether

the alter ego standard is applicable to a party for the purposes of personal jurisdiction, courts

consider: "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling

of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space,

address, and telephone numbers of corporate entities; (6) the degree of discretion shown by the

allegedly dominated corporation; (7) whether the dealings between the entities are at arms'

length; (8) whether the corporations are treated as independent profit centers; (9) payment or

guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property

between the entities." *Koh*, 2023 WL 5352786, at *2.

Neither the AC nor the Plaintiff's Opposition makes representations as to any of these factors.  (*See generally* AC).  Therefore, the Court cannot conclude that Solite is bound based on alter ego theory.  *See Koh*, 2023 WL 5352786, at *3 (rejecting the applicability of alter ego theory to a corporation based on the fact that its owner was a signatory where the plaintiff failed to allege facts that would address the factors outlined above); *Beskrone*, 656 F. Supp. 3d at 515 (rejecting the applicability of alter ego theory where the SAC did not provide "any factual allegations" demonstrating that any of the above factors applied).

### c.  Johnson

The Court nonetheless concludes that personal jurisdiction may be exercised over Johnson by virtue of the tort claims Plaintiff brings against him.  In *Magi XXI, Inc. v. Stato della Citta del Vaticano*, the Second Circuit held that "[a] contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims ultimately depend on the existence of a contractual relationship between the signatory parties."  714 F.3d at 724.  Here, Plaintiff alleges that Johnson engaged in tortious interference with the RCA.  (*See* AC ¶¶ 146– 156.)  This claim cannot be resolved without analysis of the underlying contractual agreements in the RCA, and therefore the Court may exercise personal jurisdiction over Johnson pursuant to the rule articulated in *Magi*.  *See Seagrape Invs. LLC v. Tuzman*, No. 21-CV-7517, 2024 WL 4337448, at *6 (S.D.N.Y. Sept. 26, 2024) (concluding that the forum selection clause extended to plaintiff's tortious interference claim and noting that: "[t]o succeed on a tortious interference claim, a plaintiff must establish the 'defendant's intentional procurement of the third-party's breach of the contract without justification.' The claim thus assumes the existence of a contract." (quoting *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 343 (2d Cir. 2024)); *Fifth & Fifty-Fifth Residence Club Ass'n, Inc. v. Vistana Signature Experiences, Inc*., No. 17-

CV-1476, 2018 WL 11466157, at *8 (S.D.N.Y. Sept. 28, 2018) (concluding that the plaintiff's tortious interference claim fell within the scope of a forum selection clause because it "concern[ed] the . . . construction . . . or performance" of an underlying contractual agreement (citation omitted)).[6]

* * *

In sum, Plaintiff fails to offer any basis for the Court to exercise personal jurisdiction over Solite, but successfully alleges personal jurisdiction is appropriate as to Sanchez and Johnson.  Because Plaintiff has successfully established a prima facie case for personal jurisdiction as to Sanchez and Johnson, the Court grants Defendants' request for limited discovery.  *See Cerovene, Inc. v. Fukuzyu Pharm. Co.*, No. 24-CV-464, 2025 WL 764171, at *3 (S.D.N.Y. Mar. 10, 2025) (granting the plaintiffs' request for limited jurisdictional discovery after they successfully made out a prima facie case for personal jurisdiction); *Spetner v. Palestine Inv. Bank*, 495 F. Supp. 3d 96, 117 (E.D.N.Y. 2020) ("Jurisdictional discovery is appropriate where there are contested allegations sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record."), *vacated and remanded on other grounds*, 70 F.4th 632 (2d Cir. 2023).

### 2. Sanctions

Plaintiff also moves for sanctions pursuant to Rule 11(b)–(c).  (*See* Pl. Opp. 28–29.) Plaintiff argues that Defendants' arguments that Sanchez and Solite are not bound by the forum

---

[6] This logic does not apply to Plaintiff's misappropriation of trade secrets claim against Solite because those claims do not depend on the existence of the RCA for their resolution.  (*See* AC ¶¶ 136–145.)

selection clauses in the RCA or the Settlement Agreement are sufficiently frivolous to warrant

sanctions.  (*See id*.)  For the following reasons, the Court denies this Motion.

Rule 11(b) provides:

[B]y presenting to the court a pleading, written motion, or other paper . . . an
attorney . . . certifies that to the best of the person's knowledge, information, and
belief, formed after an inquiry reasonable under the circumstances . . . the factual
contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery.

*Trireme Energy Holdings, Inc. v. RWE Renewables Ams., LLC*, No. 22-CV-7439, 2025 WL

1779016, at *3 (S.D.N.Y. June 27, 2025) (omissions in original) (quoting *Galin v. Hamada*, 283

F. Supp. 3d 189, 200–01 (S.D.N.Y. 2017) (quoting Fed. R. Civ. P. 11(b)(2)–(3))).  "The Court

may award sanctions against a party if the party has 'violated Rule 11(b) by making false,

misleading, improper, or frivolous representations to the court."  *Id.* (quoting *Mason Agency Ltd.*

*v. Eastwind Hellas SA*, No. 09-CV-6474, 2009 WL 3787261, at *2 (S.D.N.Y. Nov. 11, 2009)).

In order to conclude that a legal argument is frivolous, the Court must conclude that "under an

objective standard of reasonableness it is clear that there is no chance of success and no

reasonable argument to extend, modify or reverse the law as it stands."  *Gong v. Sarnoff*, No. 23-

CV-343, 2023 WL 5372473, at *10 (S.D.N.Y. Aug. 22, 2023) (alterations adopted) (internal

quotation marks omitted) (quoting *Galonsky v. Williams*, 1997 WL 759445, at *3 (S.D.N.Y. Dec.

10, 1997).  "Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary

circumstances." *Hubbuch v. Cap. One, N.A.,* No. 25-CV-406, 2025 WL 1983218, at *12

(S.D.N.Y. June 11, 2025) (quoting *Galin v. Hamada*, 283 F. Supp.3d 189, 201 (S.D.N.Y. 2017),

*aff'd*, 753 F. App'x 3 (2d Cir. 2018) (summary order)), *report and recommendation adopted*, No.

25-CV-406, 2025 WL 1934472 (S.D.N.Y. July 15, 2025).

First, as discussed above, the Court grants Defendants' Motion as to Solite.  (*See* supra II.B.1.b.)  Therefore, Defendants' arguments as to Solite cannot be frivolous, and Plaintiff's Motion is denied on that score.  *See Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at \*11 n.8 (S.D.N.Y. Sept. 14, 2023) (rejecting the defendants' motion for sanctions for "improper expenditure of time and resources in arguing domicile" where the defendants did not prevail on that ground); *DiResta v. Biz2Credit Inc.*, No. 21-CV-208, 2021 WL 6052104, at \*7 (S.D.N.Y. Dec. 20, 2021) (denying the plaintiff's motion for sanctions where the defendants' argument prevailed).

Second, although the Court has concluded that Plaintiff has established a prima facie claim of personal jurisdiction over Sanchez, the arguments made by Defendants were not patently frivolous.  As noted above, the Court construed all facts in favor of Plaintiff, notwithstanding any countervailing affidavits submitted by Defendants, affidavits which may well establish that Sanchez communicated to Plaintiff that he did not consent to the RCA's terms.  (*See* supra II.B.1.a.)  Therefore, the Court cannot conclude that Defendants' arguments were so frivolous as to merit sanctions.  *See Walker v. Accenture PLC*, 511 F. Supp. 3d 169, 204 (D. Conn. 2020) (denying Rule 11 sanctions motion where the circumstances "present[ed] a 'heavily factual' inquiry that 'would benefit from a full evidentiary record.'" (quoting *Sang Lan v. Time Warner, Inc.*, No. 11-CV-2870, 2015 WL 4469838, at \*2 (S.D.N.Y. July 13, 2015)).

III. <u>Conclusion</u>

For the foregoing reasons, the Court denies Defendants' Motion in part and grants it in part. The Court also denies Plaintiff's Motion. The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 46, 48). The Court will hold a status conference on November 19, 2025 at 10:30 AM.

SO ORDERED.

Dated:    September 26, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge